UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-21733-GAYLES/OTAZO-REYES

MSPA CLAIMS 1, LLC,

    Plaintiff,

v.

BAYFRONT HMA MEDICAL CENTER,
LLC, d/b/a BAYFRONT MEDICAL
CENTER,

    Defendant.

                                              /

## ORDER

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Complaint [ECF No. 10]. The Court has carefully reviewed the Motion, the record, and the applicable law and is otherwise fully advised. For the reasons discussed below, the Motion is granted in part.

## BACKGROUND

This action is one of many brought by Plaintiff MSPA Claims 1, LLC ("Plaintiff") against different insurance companies and/or healthcare providers seeking reimbursement for conditional payments made on behalf of Medicare Part C enrollees in accordance with the Medicare Secondary Payer Act ("MSP"). Since 2015, Plaintiff and its related companies have filed dozens of actions in state and federal courts in Florida. The legal landscape of the Medicare Act—best described as a statutory maze[1]—has evolved with each new round of Plaintiff's filings. The bulk of these actions seek recovery against a primary insurer, typically an automobile or commercial liability insurer, for damages under the MSP and/or state subrogation

---

[1] The Act, described as "remarkably abstruse," certainly qualifies as a complex maze. *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 (11th Cir. 2016); s*ee also In re Avandia*, 685 F.3d 353, 365 (3d Cir. 2012) ("[T]he Medicare Act has been described as among 'the most completely impenetrable texts within human experience.'") (quoting *Cooper Univ. Hosp. v. Sebelius*, 636 F.3d 44, 45 (3d Cir. 2010)).

1

laws. In this case, however, Plaintiff brings claims under the MSP against a healthcare provider, an unworn path to recovery under the Act.

## I. Intersection of Acronyms – Where the MSP and MAOs Meet

Much of the MSP litigation in this district—including this action—is centered on the extent to which Medicare Advantage Organizations ("MAOs") may utilize the private action provisions of the MSP. As a result, the Court finds that a brief history of the Medicare Act's provisions establishing the MSP and MAOs will help frame the issues.

### A. The MSP

In 1980, in an effort to reduce health care costs to the federal government, Congress enacted the MSP. *See Humana Med. Plan, Inc. v. W. Heritage Ins.*, 832 F.3d 1229, 1234 (2016). Whereas Medicare had been the primary payer for its enrollees' medical treatment, the MSP "inverted that system [; making] private insurers covering the same treatment the 'primary' payers and Medicare the 'secondary' payer." *Id*.

The MSP is codified at 42 U.S.C. § 1395y(b) and contains nine paragraphs. Paragraphs (2), establishing Medicare as a secondary payer, and (3), establishing a private cause of action, are of import to this action. While the text of the Act is undoubtedly convoluted, its proscription against Medicare as a primary payer is clear. Under subparagraph (2)(A), the Secretary of Health and Human Services may not pay for items or services for its enrollees if a primary plan[2] has paid or can reasonably be expected to pay, except as set forth in subparagraph (2)(B). Subparagraph (2)(B) permits the Secretary to make payments for covered services, even if there is a primary plan covering the enrollee. However, "[s]uch payment is conditioned on Medicare's right to reimbursement if a primary plan later pays or is found to be responsible for payment of

---

2  Primary plans are defined as group health plans, workmen's compensation law/plans, automobile or liability insurance plans or no fault insurance, and self-insured plans. *See* 42 U.S.C. § 1395y(b)(2)(A).

the item or service." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1306 (11th Cir. 2006) (quoting *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002)). This conditional payment provision requires both "a primary plan [] and an entity that receives payment from a primary plan" to reimburse the Secretary for any conditional payments made by the Secretary if the primary plan has or had responsibility to make the primary payment. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii).

The MSP's conditional payment provision permits the United States to bring an action for double damages against "all entities that are or were required or responsible . . . to make payment . . . under a primary plan. . . . [or] any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." *Id.* § 1395y(b)(2)(B)(iii). Accordingly, the Government may file an action against a primary insurer or an entity that received a payment from a primary insurer to collect double damages when the insurer or recipient of funds fails to reimburse Medicare for conditional payments made on behalf of an enrollee. As detailed in the Centers for Medicare and Medicaid Services ("CMS") implementing regulations, a recipient could include the Medicare beneficiary, a medical provider, or a law firm receiving settlement proceeds. *See* 42 C.F.R. § 411. 24(g) ("CMS has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment.")[3]

---

3   In *U.S. v. Stricker*, 524 F. App'x 500, 504 (11th Cir. 2013), the Eleventh Circuit set forth a "real-world example" to better explain the conditional payment and reimbursement portions of the MSP when the Government is administering Medicare benefits.

> Imagine a 65-year-old Medicare beneficiary who is injured when he slips on the wet floor of a supermarket and subsequently receives medical attention for his injuries. If the supermarket's negligence caused the man's injuries, the supermarket (or its liability insurance carrier) is ultimately responsible for his medical bills. But if the supermarket denies responsibility, litigation may be required to resolve the man's negligence claim, and he may not have the money to pay for his medical care in the meantime. Because this is a situation in which the supermarket cannot reasonably be expected to pay promptly, the Act allows Medicare to pay the man's medical bills on a conditional basis.

While subparagraph (2)(B)(iii) details the Government's right to bring an action for double damages, subparagraph (3)(A) provides for "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). "The MSP private cause of action is not a *qui tam* statute but is available to a Medicare beneficiary whose primary plan has not paid Medicare or the beneficiary's healthcare provider." *Humana*, 832 F.3d at 1235.

### B. MAOs

In 1997, Congress created the Medicare Advantage program, wherein private insurance companies, operating as MAOs, contract with CMS to administer Medicare benefits to individuals enrolled in a Medicare Advantage program under Medicare Part C. *See id*. Part C, found at 42 U.S.C. § 1395w-22(a)(4), designates MAOs, like the Secretary, as secondary payers.

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

---

Now imagine that the man and the supermarket settle the negligence claim and that the supermarket's insurer pays the settlement funds to the man. To recoup the medical payments Medicare conditionally made, the Act allows the government to sue the insurer (which, because of the settlement, has been demonstrated to be the primary payer), the injured man (who is the recipient of a payment from the primary payment), or both of them. The government can, of course, recover only once, *see* 54 Fed.Reg. 41716, 41720 (Oct. 11, 1989) (the agency "will not pursue duplicate recoveries"), and if its recovery is against the insurer, the insurer can in turn sue the man to recover the payment it made to him, *see* [*Health Ins. Ass'n of America, Inc. v. Shalala*, 23 F.3d 412, 418 n. 4. (D.C. Cir. 1994)]. *See also* 42 C.F.R. § 411.24(i)(1) ("If Medicare is not reimbursed as required ... the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.").

*Id.* at 504.

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22.

Perhaps because Part C was enacted years after the MSP and/or because the Act is so complicated, there has been extensive litigation over whether MAO's may utilize the MSP's private action provision to assert claims against primary plans. The Eleventh Circuit answered this question in *Humana,* holding that "an MAO may avail itself of the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the MAO's secondary payment." *Humana*, 832 F.3d at 1238.[4] The Court, after finding that "Congress empowered (and perhaps obligated) MAOs to make secondary payments under the same circumstances as the Secretary," saw "no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations." *Id.* at 1238.

In this action, the Court is faced with a new question—whether an MAO also has a private cause of action against the recipient of a primary payment.

## II. The Events Giving Rise to This Action

On February 1, 2014, D.W., an enrollee in a Medicare Advantage Plan Administered by Florida Healthcare Plus ("FHCP"), was involved in an automobile accident. Following the accident, D.W. received medical treatment at a facility operated by Defendant Bayfront HMA Medical Center ("Bayfront"). In addition to his Medicare Advantage Plan, D.W. was also covered by First Acceptance Insurance Company ("First Acceptance"), which provided no-fault benefits. On April 14, 2014, Bayfront billed First Acceptance $6,255.96 for medical items and

---

4     In *Allstate*, the Eleventh Circuit held that "a contractual obligation may serve as a sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP," thus resolving the question of whether an MAO has a private cause of action under the MSP against a primary plan absent a judgment or settlement. *Allstate*, 835 F.3d at 1361.

services provided to D.W. First Acceptance paid $3,753.58 of the billed charges. On May 12, 2014, Bayfront billed FHCP $6,255.96 for medical items and services provided to Enrollee. FHCP paid $691.64 of the billed charges.

On March 9, 2017, Plaintiff, as assignee of FHCP,[5] filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, on behalf of itself and a purported class of similarly situated Florida MAOs or their assignees against Bayfront. Plaintiff alleges (1) an MSP private cause of action under 42 U.S.C. § 1395y(b)(3)(A); (2) a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim; and (3) an unjust enrichment claim. On May 10, 2017, Bayfront removed the action to this Court. On June 5, 2017, Bayfront moved to dismiss the Complaint arguing that Plaintiff's MSP claim must be dismissed because it is against a provider and because it is barred by the applicable statute of limitations. In addition, Bayfront argues that Plaintiff has no standing to bring its FDUTPA or unjust enrichment claims, that the FDUTPA claim is preempted by the MSP, and that Plaintiff fails to state a claim for unjust enrichment.

## ANALYSIS

### I.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

---

5    In *Allstate*, the Eleventh Circuit found that Plaintiff MSPA Claims, I, LLC had a valid assignment from FHCP for FHCP's claims under the MSP. *Allstate*, 835 F.3d at 1358. The Court notes that the standing of other entities related to MSPA Claims I has been raised in other actions currently pending before this Court. Those issues are not present in this action.

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

## II. MSP Claim

### A. Claims Against a Provider

Plaintiff seeks to bring a private cause of action under § 1395y(b)(3)(A) against Bayfront for Bayfront's alleged failure to reimburse Plaintiff in accordance with the MSP.[6] As detailed above, the MSP clearly provides the Government with a cause of action for double damages against both primary insurers and entities that received payment or proceeds from a primary plan. 42 U.S.C. § 1395y(b)(2)(B)(iii). Plaintiff, however, is proceeding under subparagraph (3)(A), which allows a private party to bring an action for double damages "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A) [of § 1395y(b)]." *Id.* § 1395y(b)(3)(A). Bayfront argues that this language only permits a private cause of action against primary plans and not providers. As set forth below, the Court disagrees.

---

6     Plaintiff alleges that, pursuant to § 1395(b)(3)(A), it is entitled to $12,511.92—double the amount Bayfront billed Plaintiff (and First Acceptance) for services. However, in the Complaint's factual allegation, Plaintiff alleges that it paid Bayfront only $691.64 of the $6,255.96 bill and that First Acceptance paid only $3,753.58 of the bill. Complaint at ¶ 46. While the Court finds, as a matter of law, that an MAO has a private cause of action against a provider under the MSP, Plaintiff will still, following discovery, be required to prove that the amount it paid Bayfront was actually a conditional payment subject to reimbursement under the MSP.

1. The Provision is Ambiguous

To begin, the Court looks at the plain language of the provision. Congress created a private cause of action "***in the case of*** a primary plan which fails to provide for primary payment (***or appropriate reimbursement***) in accordance with paragraphs (1) and (2)(A).*" Id.* § 1395y(b)(3)(A) (emphasis added). The Court finds that this provision could be interpreted in more than one way. Indeed, because the provision does not specifically reference providers, it could be interpreted as only permitting a private cause of action against a primary plan. However, the provision also could be interpreted to apply "in the case of" any entity's failure to provide "appropriate reimbursement." Both primary plans and providers are required to reimburse the Secretary or an MAO for conditional payments. *See Id.* § 1395y(b)(2)(ii), § 1395w-22(a)(4). As a result, § 1395y(b)(3)(A) could mean that a private cause of action is available in cases where a primary plan fails to provide for primary payment, where a primary plan fails to reimburse the Secretary or an MAO, or where a provider fails to make an appropriate reimbursement. Because the statutory language can be reasonably interpreted in this broad manner or narrowly, the Court finds the provision ambiguous. *Compare Humana Ins. Co. v. Paris Blank, LLP*, 187 F. Supp. 3d 676, 681 (E.D. Va. 2016) (holding that the "plain language [of § 1395y(b)(3)(A)] fails to limit the parties against whom suit may be maintained"), *with MSPA Claims 1, LLC v. Halifax Health, Inc.*, No. 6:17-cv-1790-Orl031DCA, 2018 WL 1139063, at *4 (M.D. Fla. Mar. 2, 2018) (holding that § 1395y(b)(3)(A) does not apply to entities other than primary plans).

2. Deference to CMS Regulations

CMS has adopted a broad interpretation of this provision. Under *Chevron,* a Court must defer to an agency's interpretation of its governing statute unless "Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S.

837, 842 (1984). If a statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "A permissible construction of the statute is one which is reasonable in light of the language, policies, and legislative history of the statute." *United States v. Bd. of Trs. for Univ. of Ala.,* 908 F.2d 740, 746 (11th Cir. 1990) (citing *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131 (1985)).

CMS regulations provide that "[MAOs] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). Subpart B of § 411 of the regulations provides that "CMS has a right of action to recover its payment from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment." 42 C.F.R. § 411.24(g). Accordingly, MAOs, having the same recovery rights as the Secretary, have a right of action to recover from a provider.

The Court finds the CMS regulations to be a permissible construction of the MSP. *See Paris Blank*, 187 F. Supp. 3d at 680 (finding 42 C.F.R. § 411.108 to be a "permissible interpretation of the MSP statute"). In construing the statute, the Court does not read the private cause of action provision in isolation. Rather, the Court reads the words of the provision in context, "with a view to their place in the overall statutory scheme." *Humana*, 832 F.3d at 1236 (quoting *King v. Burwell,* 135 S. Ct. 2480, 2489 (2015)); *see also MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1360 (11th Cir. 2016) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). Indeed, in *Humana*, the Eleventh Circuit read "the MSP private cause of action in the context of the broader Medicare Act." *Humana*, 832 F.3d at 1236.

9

As detailed above, Medicare Part C requires MAOs to provide their enrollees with the same benefits that are provided under traditional Medicare. *See* 42 U.S.C. § 1395w-22(a)(1)(A). Further, MAOs, like the Secretary, are considered secondary payers. *Id.* § 1395w-22(a)(4). This statutory scheme does not make sense if MAOs are required to provide certain benefits in the same manner as the Government but then are limited, in ways the Government is not, from pursuing reimbursement.

In addition, the private action provision, found at paragraph (3), provides for a private cause of action when there has not been payment or reimbursement "in accordance with paragraphs (1) and (2)(A)." *Id.* § 1395y(b)(3)(A).[7] The Court, therefore, must look to multiple linked subsections to comprehend the law as a whole. Subparagraph (2)(A), directly referenced in the private action provision, prohibits any Medicare payment when there is a primary plan, "except as provided in subparagraph (2)(B)." *Id.* § 1395y(b)(2)(A). Subparagraph (2)(B), among other things, (i) grants the Secretary the authority to make conditional payments; (ii) requires primary plans and "an entity that receives payment from a primary plan" to reimburse the Secretary; and (iii) permits an action by the United States to recover double damages against both a primary plan and an "entity that receives payment from a primary plan." *Id.* § 1395y(b)(2)(B). Reviewing these provisions, the Court is able to draw a line from paragraph (3), permitting a private cause of action for double damages, to subparagraph (2)(B), which allows the Government to bring a cause of action for double damages against **both** a primary payer and a provider. "Thus, the three paragraphs work together to establish a comprehensive MSP scheme." *Humana*, 832 F.3d at 1237. The Court, therefore, finds that the CMS regulation permitting MAOs to bring a private action for double damages against a provider, is a

---

7   Paragraph (1), relating to group health plans, is not relevant to this action.

permissible construction of § 1395y(b)(3)(A). *See, e.g., Paris Blank, LLP*, 187 F. Supp. 3d at 681.

Accordingly, deferring to CMS's regulations, the Court finds that Plaintiff may bring a private cause of action against Bayfront for double damages if Bayfront received a primary payment that should have been reimbursed to Plaintiff. Bayfront's Motion to Dismiss, to the extent it argues that there is no MSP private cause of action against a provider, is denied.[8]

### B.     Statute of Limitations

Defendant also argues that Plaintiff's MSP claim is barred by the limitations period contained in § 1395y(b)(2)(B)(vi). That section provides in pertinent part:

> Nothwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

42 U.S.C. § 1395y(b)(2)(B)(vi). The Court disagrees with Defendant's interpretation of that statute. Subparagraph (B)(vi) does not contemplate litigation. Rather, it merely sets forth a timeframe in which the Government must request reimbursement.

The applicable statute of limitations is found in subparagraph (B)(iii)—"Action by United States"—which provides in pertinent part:

> An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.

*Id.* § 1395y(b)(2)(B)(iii). This language, encompassed in the same subparagraph detailing the United States' ability to bring a cause of action for double damages, clearly sets forth the

---

8       The Court notes that the Middle District of Florida recently reached the opposite conclusion in *MSPA Claims 1, LLC v. Halifax Health, Inc.*, No. 6:17-cv-1790-Orl031DCI, 2018 WL 1139063, at *4 (M.D. Fla. Mar. 2, 2018) (holding that § 1395y(b)(3)(A) does not apply to entities other than primary plans).

applicable statute of limitations.  Plaintiff brought this action on March 9, 2017, less than three years from the date it was billed by Bayfront or had any notice that a primary payment had been made to Bayfront.  The action, therefore, is timely and the Motion to Dismiss must be denied.

### III.   FDUTPA AND UNJUST ENRICHMENT

Defendant argues that Plaintiff's FDUTPA and unjust enrichment claims must be dismissed because Plaintiff's assignment did not include those types of claims.  The Court agrees.

Plaintiff brings its claims pursuant to the prior assignment between FHCP and La Ley.  The Settlement Agreement, detailing the terms of the assignment between FHCP and La Ley, provides:

> FHCP assigned all rights, title and interest held by FHCP to certain recoveries related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or applicable Federal and State subrogation laws.

Settlement Agreement, Compl., Ex. C [ECF No. 1-1].  Neither FDUTPA nor unjust enrichment are federal or state subrogation laws and therefore are not included in the assignment.  Accordingly, Plaintiff has no standing to bring those claims and the Motion to Dismiss Counts II and III must be granted.[9]

---

9    Plaintiff purports to bring this action on behalf of a class.  Defendant has not moved to dismiss the class allegations.  The Court notes, however, that Plaintiff will need to address several issues regarding the propriety of proceeding as a class action on a motion for class certification.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Complaint [ECF No. 10] is **GRANTED in part.** Counts II and III are DISMISSED without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of March, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE